.Case 81—PETITION EQUITY—June 10.

# City of Louisville v. Muldoon, &c.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

1. CONTRACT FOR CONSTRUCTION OF STREET—AGREEMENT TO KEEP IN REPAIR—PLEADING—Where a contractor undertook by contract with a city to construct an asphalt pavement, and to keep it in repair for a term of five years from the completion of the work, the city to retain ten per cent. of the cost as security for the perform-

City of Louisville v. Muldoon, &c.

ance of the contract to keep the street in repair, in an action brought at the end of the five years by persons who had succeeded by purchase to the right of the original contractor, seeking to recover of the city the ten per cent. retained, it was essential to the plaintiffs' cause of action that they should allege that the street was kept in repair as covenanted by the original contractor. It was not sufficient for them to allege that they were without knowledge or information sufficient to form a belief as to that matter, or that it was either kept in repair or was not kept in repair, and that they did not know which was true.

2. SAME—PARTIES TO ACTION.—A company which covenanted with plaintiffs to keep the street in repair was improperly joined as a defendant, there being no contract between that company and the city.

2. TRANSFER OF SUITS.—If there had been an issue made by the pleadings concerning the fact of the original contractor having kept the street in repair, it would have been the duty of the chancellor, upon motion, to transfer the action for trial by jury.

H. S. BARKER FOR APPELLANT.

1. The petition is fatally defective in failing to allege that the Barber Asphalt Company *did* the repairing called for by plaintiffs' contract. The alternative allegation is insufficient. (Civil Code, sec. 113, subsec. 4; L. & N. R. Co. v. Coppage, 7 Ky. Law Rep., 527.

2. The replies of Messrs. Harris, Snyder and Muldoon are not sufficient, because they deny having knowledge or information sufficient to constitute a belief as to the allegations of the counter-claim of the city, whereas the facts alleged were such that plaintiffs were bound to know. (Civil Code, sec 113, subsec. 7.)

3. The answer and counter-claim presented a defense which the defendant was entitled to have tried by jury, and the court should have transferred the case to the common law docket for that purpose. (Meek v. McCall, 80 Ky., 371; Frazer v. Naylor, 1 Met., 593; Woodward v. Newcomb, 12 Ky. Law Rep., 141; Tisdale & Thiessen v. Reed, 11 Ky. Law Rep., 98.)

4. The court erred in refusing to allow the city to file amended answer and counter-claim.

5. The material put down was not that called for by the contract, and was defective and worthless.

T. L. BURNETT AND BARNETT, MILLER & BARNETT FOR APPELLEES.

1. Allegations in the alternative are expressly authorized by the Code. (Civil Code of Practice, sec. 113, subsec. 4.)

2. The court will construe the pleadings to support the judgment below if possible. (Ky. Lumber Co. v. Coxe, 14 Ky. Law Rep., 143.)

3. The court did not abuse its discretion in rejecting the amended answer.
   There is a large discretion as to allowing amendments. (Louisville
   Underwriters v. Pence, 14 Ky. Law Rep., 21; Donnelly v. Pepper,
   13 Ky. Law Rep., 82; *Idem.* 384.)

3. Admissions in previons pleadings are conclusive. (Wilborn v. Ritter,
   13 Ky. Law Rep., 128; Newton v. Long, 13 Ky. Law Rep., 698.)

4. The city engineer is a judge whose decision is final; when he says to
   the council "work is properly done, pay for it," then all are con-
   cluded, himself included.

5. Covenants are independent, if, by their terms, the time of performance
   of one is so fixed that it is to happen, or may happen, before the per-
   formance of the other. (5 Lawson's Rights and Remedies, sec. 2294,
   p. 3853.)

   Under the contract the street was to be remade or reconstructed
before the duty to keep in repair the work so made could begin.
These covenants were, therefore, independent covenants. The cov-
enant by two of plaintiffs to keep the street in repair for five
years after its acceptance, was not the sole consideration of the cov-
enants. The making of the street according to the specifications con-
stituted the largest part of the consideration, "and it is a settled rule
that when the plaintiff's covenant constitutes only a part of the con-
sideration of the defendant's, and the defendant has actually received
a partial benefit, and the breach on the part of plaintiff might be
compensated in damages, an action may be supported against the
defendant without averring performance by plaintiff." (Payne v.
Bettisworth, 2 A. K. Mar., 783; 5.Mon., 387.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

In 1883 T. P. Shanks, principal, and M. Muldoon
and J. L. Smyser, sureties, made a contract with the
City of Louisville for reconstruction of Third street
by laying an asphalt pavement from Kentucky street
to Shipp avenue, at a price per yard fixed, and pay-
able upon monthly estimates during progress of the
work, which was to be done according to plans and
specifications of the city engineer, made part of the
contract.   One clause of the specifications is as fol-
lows: "Good and sufficient bonds to the City of Louis-
ville, in a penal sum equal to the estimated amount
of the contract, with sureties, to be approved by the

mayor, will be required from all contractors, guaranteeing that their contract will be strictly and faithfully performed to the satisfaction of and acceptance by the mayor; *and that the contractors will keep new pavements or other new works in repair for a term of five years from the date of the completion of their contracts, and from that date ten per centum of the cost of all new work will be retained as an additional security and guarantee fund to keep the same in repair for said term;* which said per centum will be invested in registered bonds of the United States, with interest thereon paid to said contractor."

February 11, 1890, M. Muldoon, Theodore Harris and J. L. Smyser brought this action in equity against the City of Louisville, T. P. Shanks, the Barber Asphalt Company, and Louisville Banking Company.

It is stated in the petition that soon after the contract was made the firm of T. P. Shanks & Co. was formed, composed of Shanks, Muldoon and Smyser, for the purpose of carrying out the contract in question, Harris very soon becoming also a partner; and that August 11, 1883, the work of reconstructing said street was completed by the firm, accepted by the City of Louisville, and final estimate of the cost thereof made by the city engineer and paid.

It is further stated that prior to commencement of this action the three plaintiffs purchased the interest of T. P. Shanks, and thereby became equitable owners of the ten per centum retained by the City of Louisville.

In respect to the covenant of T. P. Shanks and his sureties, Muldoon and Smyser, to keep said street in

Vol. 94—30.

repair for the period of five years from August 11,
1883, when the work of reconstruction was completed,
it is stated that about 1887 the firm of T. P. Shanks &
Co. sold its plant and machinery to the Barber As-
phalt Company, which undertook and agreed to keep
in good order and repair the street for remainder of
the term of five years, and to save the plaintiffs and
Shanks harmless of damage arising from said cove-
nant to the City of Louisville, and that the Barber
Asphalt Company at once took charge of that part
of Third street and its repairs, of which said city,
through its chief engineer, was duly informed. An
allegation in the petition that the Barber Asphalt
Company did make some repairs on said street under
direction of the city engineer and agents is followed
by this statement: "But whether said Barber As-
phalt Company did keep said pavement in good order
and repair until the 21st day of August, 1889, as the
said Shanks had been, by his contract, bound to do,
plaintiffs do not know. *It is either true that said
Barber Asphalt Company did so keep the same in
good order and repair or that it did not. Whether
it did or not, plaintiffs do not know. If so kept in
good order and repair, then plaintiffs are entitled
to the whole retained percentage with interest; and
if not, then plaintiffs are entitled to and ask judg-
ment against said Barber Asphalt Company for any
sum that said city may show itself entitled to longer
retain of said percentage.*"

In another part of the petition they pray judgment
directly against the City of Louisville for amount of
the several installments of interest that accrued on

the bonds mentioned, and interest on each install-
ment, or equivalent thereof, in case the fund was not
invested in bonds; also for nine thousand eight hun-
dred and ninety-six dollars and fifty-six cents, being
ten per cent. of the estimated cost of reconstructing
the street, and interest thereon from March 1, 1889.
The Barber Asphalt Company and the City of Louis-
ville each filed a general demurrer to the petition,
which was overruled as to both.   Thereupon the Bar-
ber Asphalt Company filed an answer alleging per-
formance of its contract with T. P. Shanks & Co., and
praying simply for dismissal of the action as to it.
The City of Louisville filed its answer, in which it is
averred that neither T. P. Shanks, the firm of T. P.
Shanks & Co., the Barber Asphalt Company, nor any
other person kept the street in good order and repair
during the period mentioned, but that it was, a long
time prior to August 20, 1889, allowed to fall into
decay and ruin, and became almost impassable, so that
it will require at least twelve thousand dollars to put
it in that state of repair T. P. Shanks and his sureties
covenanted to keep it in during said term of five years;
and, making its answer a counter-claim against Muldoon
and Smyser and cross-petition against Shanks, it prayed
judgment for twelve thousand dollars in damages and
dismissal of the petition.   To that answer the plaint-
iffs replied merely that they did not know, or have
sufficient information to form a belief, whether the
street had been kept in good order and repair.   But
Shanks answered the cross-petition denying the alle-
gations thereof.   Afterward the City of Louisville
moved for submission of the case to a jury for trial,

but the chancellor overruled that motion, and, on final hearing, rendered judgment against the City of Louisville for amount claimed in the petition, at the same time dismissing the counter-claim and cross-petition, and also the action as to the Barber Asphalt Company. No judgment was rendered for or against Louisville Banking Company, nor does it appear to have any interest in the case.

The first question we will consider is, whether facts sufficient to constitute a cause of action against the City of Louisville are stated in the petition.

Whether the street was reconstructed as required by the contract does not appear to have been put in issue by the answer of the City of Louisville filed, nor do we think it is now an open question, for as that work was completed and final estimate of cost made and paid without objection, it must be regarded as having been accepted.

But besides the agreement to reconstruct the street, Shanks and his sureties, Muldoon and Smyser, covenanted to keep it in repair for five years, and according to terms of the contract, the City of Louisville had the right and did retain ten per cent. of the estimated cost of reconstruction, in the language used, "as an additional security and guarantee fund to keep the same in repair for said term."

That undertaking was made entirely distinct from the contract for reconstructing the street, which had necessarily to be completed and ended before the period of five years commenced. And it is clear a full, not partial, performance of it was intended by the parties to be a condition precedent of Shanks'

right to demand and recover the ten per centum at the end of five years. Otherwise, retention of the fund by the City of Louisville for five years would have been without any use. or purpose whatever.

Such conditions in contracts about public works are not unusual or unreasonable ; in fact, they are in most cases necessary to secure full and faithful performance by contractors of their undertakings. Here the City of Louisville was going to make the experiment of constructing an asphalt pavement, about which neither .the city engineer nor contractor appear to have had any practical knowledge. The work was to. be very expensive, costing nearly one hundred thousand dollars, and in case the pavement .proved insufficient for the purpose intended, by reason of either defective construction or failure to keep it in repair, loss to the city would be great and possibly total. For, as shown by the evidence, if cracks and holes in such pavement are not immediately and effectively repaired, rapid disintegration and decay begins, and before long a great outlay will be required to restore the street to a state fit for use.

If then, as we think is unquestionable, the right to demand and recover the ten per centum was intended by the parties to depend upon Shanks having kept or caused kept the street in repair during the period mentioned, it results that an allegation that condition was performed would have been indispensable in order to constitute a cause of action therefor against the City of Louisville, he being the plaintiff.· And if so, we do not see by what process such allegation by the plaint-

iffs in this case can be dispensed with. For the right to Shanks' interest in the fund sued for was acquired by them, subject to all the conditions prescribed in the contract. Indeed, two of them were parties to that contract, and the other being a member of the firm of T. P. Shanks & Co. had full notice of the nature of it.

It is not alleged by plaintiffs in their petition that condition was complied with by Shanks or any person for him. Nor do they, in their reply, deny the statement made by the City of Louisville in its answer that he had failed to comply with it, their allegation being simply want of knowledge or sufficient information to form a belief concerning that matter. But the presumption is they did know whether the street had been kept in repair, for it was the contract duty of two of them, and interest of the other, to have it done, and consequently their reply must be regarded a mere evasion not tolerated by the Civil Code.

Section 114 makes it the duty of the court, upon or without motion, to compel parties before trial to form a material issue concerning each cause of controversy, and for that purpose they, or the one in fault, may be required to reform his or their pleading. But we have the case here of plaintiffs recovering judgment against a defendant, without alleging in their petition existence of the material and only fact upon which their action can be maintained, and actually evading an issue concerning that fact when tendered in defendants' answer. It is true Shanks denied he failed to keep the street in repair, but

he is not a party plaintiff in this action, nor has he any interest in the fund sued for, being merely defendant to the cross-petition, and interested in defeating recovery by the City of Louisville of damages in excess of the ten per centum.

It is, however, contended that the judgment of the chancellor, being supported by evidence bearing upon the main question, was authorized by subsection 4, section 113, Civil Code, which provides that "a party may allege alternatively the existence of one or another fact, if he states that one of them is true and that he does not know which of them is true."

That section has no application to this case, because there are not here two facts upon one or other of which plaintiffs may alternatively base their right of action, but only one; that is, the fact that Shanks kept or caused kept the street in repair for five years from August 23, 1884, as he covenanted to do, and in order to maintain their action it is necessary for them to allege and prove that fact. But the petition does not contain such allegation; nor have plaintiffs really alleged alternatively or otherwise existence of any fact at all; but they simply say that "it is either a fact or not a fact that the Barber Asphalt Company kept the street in repair; whether it did or did not, they do not know." And it was evidently their purpose to avoid stating whether the street was kept in repair, because if they had done so they would have been without a cause of action against either the Barber Asphalt Company or the City of Louisville. But there was no contract relation between the Barber As-

472      KENTUCKY REPORTS.      [Vol. 94.

phalt Company and the City of Louisville, and they were, therefore, improperly joined as defendants.

· 2. If there had been an issue made by the pleadings concerning the fact of Shanks having kept the street in repair, it would have been the duty of the chancellor, upon motion, to transfer the action for trial by jury; but it has never been in a state for trial, except of the general demurrer, which was improperly overruled, much less for judgment in favor of the plaintiffs against the City of Louisville.

For the errors indicated the judgment is reversed, and cause remanded for proceedings consistent with this opinion.